# United States Court of Appeals
## For the First Circuit

No. 02-1729

UNITED STATES,

Appellee,

v.

AUSTIN R. WILKERSON,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark L. Wolf, U.S. District Judge]

Before

Torruella, Circuit Judge,
John R. Gibson,* Senior Circuit Judge,
and Lynch, Circuit Judge.

Miriam Conrad for appellant.

Jonathan L. Marcus, United States Department of Justice, with whom Michael J. Sullivan, United States Attorney, District of Massachusetts, and John T. McNeil, Assistant United States Attorney, District of Massachusetts, were on brief, for appellee.

June 9, 2005

*Of the Eighth Circuit, sitting by designation.

**JOHN R. GIBSON**, <u>Senior Circuit Judge</u>.  Austin R. Wilkerson appeals his conviction for possessing a firearm as a convicted felon under 18 U.S.C. § 922(g)(1), possessing more than five grams of cocaine base with intent to distribute under 21 U.S.C. § 841(a)(1), and carrying a firearm in connection with a drug trafficking offense under 18 U.S.C. § 924(c)(1).  Wilkerson asserts that the district court erred by admitting prior consistent statements of a government witness in violation of Fed. R. Evid. 106 and the common law, permitting a government witness to interpret one of his post-arrest statements in violation of Fed. R. Evid. 701, and allowing the prosecutor to improperly vouch for his witnesses in summation and engage in other forms of prosecutorial misconduct.  Wilkerson also challenges the sufficiency of the evidence to establish a nexus between the firearm and interstate commerce, and he argues that his sentence should be remanded pursuant to <u>United States</u> v. <u>Booker</u>, 125 S. Ct. 738 (2005).  We hold that the district court erred in the admission of prior consistent statements, but this error was harmless.  We remand to the district court for resentencing, and we affirm the district court on all other issues.

Boston police officers Tom Joyce and Ed Fleming stopped Wilkerson after he made an illegal U-turn.  During the stop, the officers learned he was driving with a suspended license.  Officer Joyce asked Wilkerson to step out of the vehicle, but Wilkerson

-2-

refused.  Joyce and Wilkerson struggled for the door while Officer Fleming called for back-up.  Wilkerson then drove off and a chase ensued.

The car chase ended when Wilkerson abandoned his vehicle and took off on foot.  From about thirty to forty feet away, the officers saw Wilkerson holding his right side around his waist area.  Joyce informed his partner, "Eddie, be careful, I think he has a gun."  Joyce then broadcast over the radio, "He's reaching for his budge," meaning that Wilkerson was reaching for the waistband area where he thought Wilkerson had a gun.  The officers reported that Wilkerson continued to hold his right waist area while they followed him, but they did not actually see a gun.

The officers pursued Wilkerson onto Hartwell Street.  Officer Joyce testified at trial that he was about sixty feet away when he saw Wilkerson turn into an alley between houses at 11 and 5 Hartwell on the north side of the street.  Officer Fleming testified that he had just turned onto Hartwell when he saw the same thing.  As Wilkerson turned into the alley, Joyce slowed down and peered down the driveway on the south side of 11 Hartwell, between 11 and 15/17 Hartwell, to see if Wilkerson would come back the opposite way.  He did not.  When Joyce reached the alley, he saw Wilkerson climbing over a six- or seven-foot-high fence, no longer clutching his waist area.  Joyce did not see anything in Wilkerson's hands or belt as he lowered himself over the fence.

Joyce did not attempt to scale the fence, but instead turned around and ran up the driveway. There Joyce saw Wilkerson running west through the backyards toward Cheney Street. Officers from another police unit arrested Wilkerson when they caught him running at a slow jog on Maple Street near Cheney.

After Wilkerson's arrest, officers were ordered to retrace the route of the foot chase looking for anything he might have discarded. Another officer accompanied by Joyce found a gun and 12.55 grams of crack cocaine in the alley between 11 and 5 Hartwell. The items were described as clean and dry and lying on top of damp, dirty refuse. The gun was cocked, loaded, and ready to be fired. The key factual dispute at trial was whether Wilkerson ran up the alley where the gun and drugs were found, between 5 and 11 Hartwell, or whether he ran up the driveway between 11 and 15/17 Hartwell, which he would have had to pass before reaching the alley.

I.

Both of the evidentiary issues Wilkerson raises on appeal involve testimony about his flight path on Hartwell Street. We first address Federal Rule of Evidence 106 and the common law to determine when prior consistent statements may be used to rehabilitate a witness's credibility.

Officer Fleming testified that he saw Wilkerson turn into the alley between 5 and 11 Hartwell. Defense counsel attempted to

impeach Fleming's credibility on this subject by eliciting testimony that (1) he did not describe the alley in the radio broadcasts he made while chasing Wilkerson, (2) he referred to the alley as a driveway in his police report, and (3) in state grand jury testimony he stated that Wilkerson ran between the second and third houses on Hartwell, which would be between 15/17 and 11 if counting from the direction in which they ran. Fleming was impeached on other subjects with his federal grand jury testimony, but none concerned Wilkerson's flight path.

To rehabilitate his credibility, the government asked Officer Fleming on redirect examination, "[A]t any time prior to writing the report or in testifying in this case, did you ever indicate that [Wilkerson] ran up anyplace other than that area between 5 and 11 Hartwell?" He answered no. He was then asked, "[A]t any prior time, writing a report or in your prior testimony, did you indicate that the defendant ran up any location other than this location between 5 and 11 Hartwell?" Again he answered no. Finally he was asked, referring to his federal grand jury testimony, "[D]o you recall what you said in that testimony?" Fleming answered:

> A. I testified to the fact that I saw the defendant run on to Hartwell Street and run up an alleyway between two homes on Hartwell Street.
>
> Q. And were you shown two photographs in the grand jury?
>
> A. I was.

Q.    And what did you identify those photographs as being?

A.    As the alleyway the defendant ran.

Defense counsel objected to this line of questioning. She argued that the testimony was hearsay and should not be allowed as non-hearsay prior consistent statements under Federal Rule of Evidence 801(d)(1)(B) because it was not offered to rebut a charge of recent fabrication. The district court agreed and ruled that Fleming's testimony could not be admitted under Rule 801. Instead, the court allowed the testimony under Rule 106[1], the rule of completeness. Defense counsel maintained her objection. The district court, sua sponte, gave a limiting instruction directing the jury to consider the testimony only for the officer's credibility and not for the truth of the statements.

We review the district court's ruling for abuse of discretion. See United States v. Millan, 230 F.3d 431, 434 (1st Cir. 2000). We conclude that the district court erred in admitting the testimony, but the error is harmless.

In United States v. Simonelli, 237 F.3d 19, 25-29 (1st Cir. 2001), this court addressed the same issues presented here. On cross-examination, a witness's prior inconsistent statements

---

[1]    "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Fed. R. Evid. 106.

were used to impeach his credibility.  On redirect the government asked the witness about statements he made to the grand jury which were consistent with his trial testimony.  Some of the questions went beyond the specific points covered on cross-examination, but all were within its general scope.  Many of the statements were used only to rehabilitate the witness, rather than as substantive evidence.  See id. at 26.

In Simonelli we stated that when prior consistent statements are admitted to rehabilitate a witness, admissibility is "determined by the interplay between the rule of completeness and the common law doctrine about prior consistent statements." Id. at 27.  We noted that both the rule of completeness and the common law doctrine allow prior consistent statements when they tend to show that a statement used to impeach a witness is not really inconsistent when understood in its proper context. See id. at 27-28.

The government argues that Officer Fleming's testimony was properly admitted because it was offered to rebut the impression created by defense counsel's cross-examination that Officer Fleming had given conflicting or uncertain accounts of Wilkerson's flight path. However, Simonelli makes clear that prior consistent statements must at least have "some rebutting force beyond the mere fact that the witness has repeated on a prior occasion a statement consistent with his trial testimony." See id.

at 27 (quoting United States v. Pierre, 781 F.2d 329, 331 (2d Cir. 1986)).  The redirect testimony at issue does not meet the required standard.  Defense counsel cross-examined Officer Fleming about inconsistencies in the way he described Wilkerson's flight path and his failure to broadcast information about the alley over the police radio.  Confirming on redirect that the officer had never described a different flight path did not clarify or otherwise provide context for the statements used to impeach Fleming. Rather, the testimony only bolstered Officer Fleming's credibility generally by restating what had already been said.  That kind of rehabilitation is impermissible.  See Simonelli, 237 F.3d at 28 ("There is no rule admitting all prior consistent statements simply to bolster the credibility of a witness who has been impeached by particulars.").

The government argues that any error in admitting the testimony is harmless.  "A non-constitutional evidentiary error is harmless . . . so long as it is highly probable that the error did not influence the verdict."  United States v. Piper, 298 F.3d 47, 56 (1st Cir. 2002).  Several factors lead us to conclude that the error is harmless.

The government's case against Wilkerson was strong even without Officer Fleming's redirect testimony. Wilkerson drove away from the officers, prompting a car chase; Wilkerson abandoned his vehicle and ran from the officers on foot; both officers saw

Wilkerson holding his waist area and believed he had a gun; Officer Joyce warned other officers over the police radio that Wilkerson was reaching for his "budge," a term that conveyed Joyce's belief that Wilkerson had a gun; Joyce, who followed closer behind Wilkerson during the chase and was the government's key witness, also testified that he saw Wilkerson run up the alley where the gun and drugs were found; the gun and drugs were clean and dry in an otherwise damp and dirty alley, indicating that they had not been there very long; and shortly after running from the alley where the gun and drugs were found, Wilkerson gave up the chase. The exculpatory evidence Wilkerson presented at trial was minimal and unpersuasive.

Moreover, Officer Fleming's redirect testimony was not unique and was used only to rehabilitate his credibility. "By definition, prior consistent statements do not consist of new substantive information. Their impact comes from corroborating other, perhaps less compelling, evidence." United States v. Awon, 135 F.3d 96, 101 (1st Cir. 1998). At most the testimony strengthened Officer Fleming's previous testimony by corroborating his story. While this may warrant a new trial in some cases, it is highly probable that the corroborating testimony did not influence the verdict in this case. We conclude that the district court's error is harmless.

The second evidentiary issue Wilkerson raises is whether the district court violated Federal Rule of Evidence 701 by allowing a government witness to interpret one of Wilkerson's post-arrest statements. The decision to admit lay opinion testimony pursuant to Rule 701 is reviewed for abuse of discretion. <u>United States</u> v. <u>Tom</u>, 330 F.3d 83, 94 (1st Cir. 2003). We conclude that the district court did not abuse its discretion in admitting the testimony.

Wilkerson described his route during the foot chase in an interview after his arrest with Boston Police Detective Jeremiah Benton. Detective Benton testified that Wilkerson told him that "he grabbed the tall fence to get up on the small fence." Over defendant's objection, Benton testified that he understood the defendant "to mean that he grabbed on to a higher fence to pull himself up on to a lower fence to get over the higher fence." Detective Benton then illustrated this testimony by pointing to parts of a fence in a photograph of the alley between 11 and 5 Hartwell. In its closing argument, the government asserted that Wilkerson's post-arrest statement referred to the fence in the back of the alley in which Officers Joyce and Fleming saw the defendant run.

The government argues that this testimony is admissible under Rule 701, which permits the admission of lay opinion

testimony only when it is:

> (a) rationally based on the perception of the witness,
> (b) helpful to a clear understanding of the witness'
> testimony or the determination of a fact in issue, and
> (c) not based on scientific, technical, or other
> specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. Wilkerson argues that the testimony did not

meet the requirements of (a) or (b).

The first element of Rule 701 is "the familiar

requirement of first-hand knowledge or observation." Fed. R. Evid.

701 advisory committee's note. This court has noted that the

requirement is met when the testimony is based on the personal

perception of the witness and does not require any irrational leaps

of logic for the witness to render the opinion. See Lynch v. City

of Boston, 180 F.3d 1, 16 (1st Cir. 1999). Wilkerson argues that

this test is not met because Detective Benton lacked any special

understanding of what Wilkerson meant and he had no special

familiarity with the area. This argument is unpersuasive.

Detective Benton testified that he was familiar with the alley in

which the gun and drugs were found and with the driveway that

defense counsel argued Wilkerson used to flee. He walked up the

alley before interviewing Wilkerson, he viewed the driveway the

same night of Wilkerson's arrest, and he walked up the driveway the

next day. He was thus in a position to assess which fence

Wilkerson referred to in his statement. Benton's opinion is

therefore rationally based on his perception.

Wilkerson also argues that the "helpfulness" requirement is not met because the statement itself is clear and the jury had other evidence before it from which it could determine which area Wilkerson was describing. Wilkerson points to several cases holding that the interpretation of clear statements is not helpful to the jury. See, e.g., United States v. Dicker, 853 F.2d 1103, 1109 (3d Cir. 1988)("[T]he interpretation of clear statements is not permissible, and is barred by the helpfulness requirement of . . . Fed. R. Evid. 701."). However, these cases involve the interpretation of facially clear and coherent statements. Wilkerson's statement that he "grabbed the tall fence to get up on the small fence" is vague and confusing. It is not at all clear from the photographs of the alley and the driveway what Wilkerson meant. Detective Benton saw the area immediately after Wilkerson's arrest. He walked through the alley before taking Wilkerson's statement and walked through the driveway the next morning. Although the jury viewed the area, it was before they heard any testimony. Under the circumstances, the district court could have reasonably determined that Detective Benton was in a unique position to help the jury understand what Wilkerson might have meant. See Tom, 330 F.3d at 94. Accordingly, we conclude the district court did not abuse its discretion in admitting the testimony.

III.

Wilkerson also contends that the prosecutor engaged in misconduct in his closing argument and rebuttal. There was no contemporaneous objection to the closing argument or rebuttal at trial, so we review for plain error. United States v. Figueroa-Encarnacion, 343 F.3d 23, 27 (1st Cir. 2003), cert. denied, 540 U.S. 1140 (2004). Review for plain error requires determining whether an error occurred which was clear or obvious and which not only affected the defendant's substantial rights but also seriously impaired the fairness, integrity, or public reputation of judicial proceedings. United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001). Wilkerson argues there were five separate instances of prosecutorial misconduct, but we conclude there were none.

First, Wilkerson asserts that the government improperly vouched for the credibility of the officers' testimony by arguing in rebuttal that if the officers wanted to lie they would have made up a better story. "[A] prosecutor improperly vouches for a witness when she places the prestige of her office behind the government's case by, say, imparting her personal belief in a witness's veracity or implying that the jury should credit the prosecution's evidence simply because the government can be trusted." United States v. Perez-Ruiz, 353 F.3d 1, 9 (1st Cir. 2003). In Perez-Ruiz, we determined that the statement, "If they [were going to] make up a story, wouldn't it have been a better story?" was not improper

vouching, but rather "a logical counter to the assertions of defense counsel . . . that various government witnesses had fabricated their testimony . . . ." Id. at 9-10. The comments before us are very similar. In response to defense counsel's assertions that the officers may have fabricated their stories, the government argued that if the officers had wanted to lie, they could have said they saw defendant with a gun or otherwise embellished their testimony to make the case better. These statements do not constitute improper vouching. See also Figueroa-Encarnacion, 343 F.3d at 29 (admission of the government's statements that witnesses could have lied to make a better story was "not remotely plain error").

The prosecutor also stated several times in rebuttal that the officers "didn't stretch the truth here" when noting that the officers testified that they saw Wilkerson reach for his budge area but did not testify that they actually saw a gun. With these statements the prosecutor comes closer to the line of imparting his personal belief in the witness's veracity. However, there is no plain error, since if there is error, it is not clear or obvious and it does not seriously impair the fairness, integrity, or public reputation of judicial proceedings. See United States v. Sullivan, 85 F.3d 743, 751 (1st Cir. 1996) (not plain error where the government in closing argument and rebuttal stated that one witness "came off pretty believable," that another "couldn't have lied

-14-

about anything," that another "told you the truth," and that all of them "were up there telling the truth").

Second, Wilkerson contends that the government improperly shifted the burden of proof to the defendant by arguing that, for the jury to find that Wilkerson went through the driveway and not the alley, they would have to find that Officers Joyce and Fleming did not tell the truth. Wilkerson relies on <u>United States</u> v. <u>Roberts</u>, 119 F.3d 1006 (1st Cir. 1997), where the court found improper burden shifting when the government stated "when a defendant does 'go forward' to offer evidence, 'the defendant has the same responsibility as the government and that is to present a compelling case.'" <u>Id.</u> at 1015. The prosecutor's argument in this case is not like the statements in <u>Roberts</u>. Here, the government did not argue that Wilkerson had the burden to prove another set of facts. Rather, the government argued that if the jury found that Wilkerson ran up the driveway, they would necessarily have to find that the officers did not tell the truth, because the officers testified that he ran up the alley. This logical response to Wilkerson's theory of the case is not plain error.

Third, Wilkerson argues that the government impermissibly commented on Wilkerson's decision not to testify and shifted the burden of proof when he said "there's no real evidence" that he did not go up the alley and "pretty much nothing" to say that Wilkerson ran up the driveway. A prosecutor's remarks violate a defendant's

-15-

Fifth Amendment guarantee against self-incrimination if "in the circumstances of the particular case, the language used was manifestly intended or was of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." United States v. Wihbey, 75 F.3d 761, 769 (1st Cir. 1996). We are not persuaded the jury would naturally and necessarily take the statements to be a comment on Wilkerson's decision not to testify. In the context of the trial, it is likely the comments referred to Wilkerson's failure to produce other evidence supporting his theory of the case. At most, the comments are ambiguous. Moreover, there was significant evidence of Wilkerson's guilt and the judge instructed the jury of the defendant's right not to testify and of the government's burden of proof. We conclude that these statements do not rise to the level of plain error. See Wihbey at 770-71 (no plain error where there is ambiguity, jury instruction, and significant evidence of guilt).

Fourth, Wilkerson contends that the government misstated the evidence. The prosecutor stated several times that the witnesses saw something "heavy" in Wilkerson's right hand. He also referred to "the fence" and "that fence" in the alley when discussing Wilkerson's post-arrest statement, implying that Wilkerson had identified the fence in the alley to Detective Benton and had described pulling himself up it. These misstatements involved reasonable inferences that the prosecutor asked the jury

to draw from the facts.  They were de minimus and did not stray far enough from the actual testimony to indicate prejudice or bad faith.  Moreover, the judge instructed the jury that the lawyers' assertions were not evidence.  The statements did not "so poison[] the well that the trial's outcome was likely affected."  See United States v. Morales-Cartagena, 987 F.2d 849, 854 (1st Cir. 1993).  See also United States v. Yanovitch, 101 F.3d 202, 213 (1st Cir. 1996).  We therefore conclude that these statements were not plain error.

Finally, Wilkerson's claim that the prosecutor demeaned the defense by calling one of the defense theories a "red herring" is meritless.  See United States v. Bennett, 75 F.3d 40, 46-47 (1st Cir. 1996)(did not cross the line to call a defense argument a "diversion" that "doesn't pass the laugh test").

IV.

Wilkerson contends that evidence that the gun was manufactured outside of Massachusetts in 1918 is insufficient to establish a nexus between the firearm and interstate commerce under § 922(g).  He points to the Supreme Court's decisions in United States v. Lopez, 514 U.S. 549 (1995), United States v. Morrison, 529 U.S. 598 (2000), and Jones v. United States, 529 U.S. 848 (2000), as calling into question whether the minimal nexus standard, which requires only that the firearm has traveled in interstate commerce at some time, sufficiently satisfies the

-17-

interstate commerce element of § 922(g). See Scarborough v. United States, 431 U.S. 563, 575-78 (1977)(establishing minimal nexus standard). In United States v. Weems, 322 F.3d 18 (1st Cir.), cert. denied, 540 U.S. 892 (2003), we held that Jones does not alter Scarborough to require proof that the defendant transported the firearm in interstate commerce. Id. at 26. Every Circuit that has addressed the minimal nexus requirement after Morrison and Jones has also concluded that the nexus to interstate commerce is established if the firearm "has traveled at some time in interstate commerce." United States v. Gaines, 295 F.3d 293, 302 (2d Cir. 2002); see also United States v. Darrington, 351 F.3d 632, 634 (5th Cir. 2003), cert. denied, 124 S. Ct. 2429 (2004); United States v. Gallimore, 247 F.3d 134, 138 (4th Cir. 2001). We likewise conclude that the evidence that a firearm has traveled at some time in interstate commerce is sufficient to establish a nexus between the firearm and interstate commerce.

V.

Wilkerson argues in a supplemental brief that, in light of the Supreme Court's decision in United States v. Booker, 125 S. Ct. 738 (2005), his sentence should be remanded to the district court. Wilkerson concedes that he did not preserve this issue in the district court, so our review is for plain error. United States v. Antonakopoulos, 399 F.3d 68, 76 (1st Cir. 2005). A determination of plain error is appropriate where "there [is] an

-18-

'error' that is 'plain' and that 'affect[s] substantial rights.'" Id. at 77 (quoting United States v. Olano, 507 U.S. 725, 732 (1993)). If those factors are met, we may correct the error only if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. (citation omitted).

Wilkerson satisfies the first two requirements of the Olano plain error test because his sentence was imposed under a mandatory Guidelines system. Id. at 77. In order to prove the second two requirements, prejudice and fundamental unfairness, Wilkerson need only present a "reasonable indication that the district judge might well have reached a different result under advisory guidelines." United States v. Heldeman, 402 F.3d 220, 224 (1st Cir. 2005) (remanding for resentencing where defendant's age and health were worthy of consideration but did not warrant a downward departure under the mandatory Guidelines).

The district judge sentenced Wilkerson to the lowest available sentence under the Guidelines. He repeatedly expressed his concern about disparate treatment between federal and state court sentences in similar cases, but stated that the Guidelines did not permit him to take that disparity into account. The district judge also observed that Wilkerson had the most horrible young life he had seen in 17 years on the bench. Both the need to avoid unwarranted sentencing disparities and the history and characteristics of the defendant are among the factors to be

-19-

considered by the now advisory Guidelines.  18 U.S.C. § 3553(a).  As this court recognized in <u>Heldeman</u>, where there is a reasonable indication that the district judge might well have given a different sentence under an advisory guidelines regime, and it would be easy enough for him to say no with a minimum expenditure of effort, we are persuaded that remand is required.  402 F.3d at 224.  We express no view on whether defendant should be resentenced or on any possible resentence.

We affirm Wilkerson's conviction and remand the case to the district judge for further sentencing proceedings consistent with this opinion.